Filed 3/9/15  P. v. Solorzano CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESUS SOLORZANO,<br><br>    Defendant and Appellant. | D064671<br><br><br><br>(Super. Ct. No. SCN289128) |

APPEAL from a judgment of the Superior Court of San Diego County, Kathleen Lewis, Judge.  Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jesus Solorzano was convicted on multiple counts of the forcible rape, forcible rape with a foreign object, and forcible oral copulation of his

biological daughter, N.  (Pen. Code,[1] §§ 261, subd. (a)(2) [counts 1, 3-18], 289, subd. (a)(1)(A) [count 2], 288a, subd. (c)(2)(A) [counts 19-21].)  The offenses began when N. was 14 years old and continued until she was 16 and a half.  At trial, N. testified that she did not in any manner consent to the offenses or desire that her father perform them; rather, N. testified she felt compelled by virtue of her father's size, his physical strength and his role as her father to comply with Solorzano's repeated orders and physical advances.  At trial, Solorzano denied having any sexual contact with his daughter; instead, he testified to instances where he observed her acting out sexually.

On appeal, we consider Solorzano's contention the trial court erred in failing to instruct the jury on the lesser offenses of unlawful sexual intercourse with a minor, sexual penetration of a minor, and oral copulation with a minor.  (§§ 261.5, 289, subd. (h), 288a, subd. (b)(1).)  Although arguably the manner in which the forcible sexual offenses were pled gave rise to the possibility that the lesser offenses urged on appeal were included in the forcible crimes alleged in the accusatory pleading, we have considerable doubt the evidentiary record here supports any of the lesser included offense instructions Solorzano urges on appeal.  Such instructions are required only when there is evidence from which a jury composed of reasonable men and women could conclude the lesser offense, but not the greater one, was committed.  (See *People v. Cruz* (2008) 44 Cal.4th 636, 664 (*Cruz*).) In light of N.'s description of the offenses, her age and Solorzano's role as her father, there was little, if any, evidentiary basis for a finding that, if offenses occurred, they were anything other than forcible acts within the meaning of the statutes describing the

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

offenses for which the jury returned guilty verdicts.

However, even if lesser offense instructions had been given, there was no reasonable probability the jury would have returned a verdict more favorable to Solorzano. The jury clearly accepted N.'s version of the numerous instances of sexual assaults Solorzano committed and rejected Solorzano's contention that he had no sexual contact with his daughter. In light of that circumstance, there is no basis upon which we may conclude that, given the opportunity, the jury would have returned a verdict in which it accepted as true N.'s testimony that her father had sexual contact with her, but not her testimony that she was an unwilling participant and was compelled to comply with her father's wishes.

Accordingly, we affirm Solorzano's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Report*

In September 2010, when she was 16 years old, N. told her boyfriend, Paul L., that her father had been sexually abusing her. Paul encouraged N. to report the abuse to her mother, Celina A. Both Paul and N. stated that although they were in a romantic relationship, at the time N. reported to abuse to Paul, Paul had not penetrated N. in any manner.

N. reported the abuse to her mother, and she and her mother reported the abuse to local law enforcement. At that point, Solorzano and Celina were not married and were not living together, and Solorzano had recently been deployed by the military.

N. was examined by a Sexual Abuse Response Team (SART) nurse, and the results of the examination were in turn reviewed by sexual abuse experts who found that

3

N.'s vagina had been repeatedly penetrated. Law enforcement personnel also arranged for N. to make three recorded telephone conversations with Solorzano; in those recorded conversations, N. accused Solorzano have having sex with her and he admitted doing so. In the conversations, Solorzano expressed remorse and promised that the conduct would stop when he returned from his deployment. At one point in the conversation, N. accused Solorzano of initiating the sexual conduct and he disputed her and stated that she had initiated the conduct.

B. *Information*

On February 25, 2013, the district attorney filed a 22-count information against Solorzano. The first 21 counts alleged sex acts in which N. was the victim. A 22d count alleged that Solorzano had committed a lewd and lascivious act (§ 288, subd. (a)) on N.'s younger sister, C.

C. *Trial*

1. <u>*Prosecution Case*</u>

N. was the principal witness against Solorzano. She testified that the abuse began when she was 14 and Solorzano took her to an apartment in Escondido where, after his separation from Celina, he was living by himself. In the car, on the way to the apartment, Solorzano asked N. if she knew what an orgasm felt like. She wondered why her father asked her that question. When they arrived at the apartment, Solorzano directed her to the bedroom, told her to lie back on the bed, told her to take off her pants and her underwear, pulled her legs apart, digitally penetrated her, removed his pants, found a condom, and then penetrated her with his penis. While N. was penetrated and experiencing some pain, Solorzano began thrusting without saying anything. When he

4

was done, Solorzano got up and went into the bathroom.

Over the course of the following two years, N. estimated that Solorzano committed sex acts on her 40 to 50 times. Most of the acts were sexual intercourse either at his apartment or at Celina's home when Celina was at work and Solorzano was watching N. and her three younger siblings. However, in addition to sexual intercourse, Solorzano forced N. to orally copulate him and on one occasion he orally copulated her.

N. testified in some detail as to each of the 21 separate incidents of sexual abuse she experienced. At some point after the initial sexual assault, a second incident occurred when N. and her sisters were at Solorzano's apartment; N. had taken shower and put on her pajamas and when she got out of the shower Solorzano was on the bed in the bedroom adjacent to the bathroom. Her 12-year-old and nine-year-old sisters were in another bedroom. N. testified that she sat on the edge of the bed because she did not want to be close to Solorzano. Solorzano instructed N. to come over to him on the bed and then he told her to take off her pajama bottoms and underwear and participated in disrobing her and then had intercourse with her. Immediately after he finished having intercourse, Solorzano went into the bathroom and N. went into the bedroom with her younger sisters.

In a number of separate incidents over the following several months, at either Solorzano's apartment or at Celina's home while Celina was at work, or while N. and her siblings were traveling with Solorzano, Solorzano would come to N. in the middle of the night while she was sleeping with her sisters, direct her to another part of the home or apartment, instruct her to disrobe and have sexual intercourse with her. On one occasion, he put a towel down on a bedroom floor and after he had intercourse with her she was

bleeding. Observing the blood, Solorzano simply instructed N. to clean herself. On one occasion, Solorzano brought N. to a living room where his infant son was sleeping on a couch and had both intercourse and oral sex with N. on the very same couch. During that incident, he ejaculated in N.'s mouth and laughed at her when she washed her mouth out. In another incident, he penetrated N.'s vagina while he was visiting Celina's home and Celina was in the shower.

N. testified she felt she had to listen to her father and do what he asked. N. never initiated any sexual contact with her father, was not sexually attracted to him and did not want to be sexual with him. She testified sometimes she would fake an orgasm so that he would ejaculate and leave her alone. On three occasions she told Solorzano she did not want to have sex with him: once while they were having sex and twice when they were alone, but not having sex. Each time N. objected Solorzano promised he would stop, but he did not.

When Solorzano was abusing N., Solorzano was five feet seven inches tall and weighed about 185 pounds; N. was five feet one inch tall and weighed about 130 pounds. N. did not believe she could resist him physically. N. testified: "All the times when he was in my room having sex with me, the positions he would put me in, he was always right on top of me, really close. It's not like I could have fought him off.

"Whenever he was already on top of me and having sex, I wouldn't be able to get up if I really wanted to. He had me pinned down. He would have his forearms on either side of me. He would be all over me. Like, it almost felt as if I was, like, in some kind of cocoon. I just -- I was trapped. I couldn't get out."

N. said that she did not report the abuse to either her mother or anyone else

6

because she, her mother, and siblings depended on her father financially and for emotional support.  She finally decided to report it when she became concerned that her father might begin abusing one of her younger sisters.

In addition to N.'s testimony, the prosecution presented evidence of the physical examination that was performed on N., recordings of the three telephone conversations N. had with Solorzano following her disclosure of the abuse and testimony from a child abuse expert, who stated that children are often compliant with adult abusers with whom they are bonded and do not report the abuse out of fear of negative consequences for the abuser as well as themselves.

### 2. *Defense Case*

Solorzano testified on his own behalf.  He denied having any sexual contact with N. at anytime.  Solorzano testified he observed N. acting out sexually at times and that at one point she had asked him about birth control.  With respect to the recorded telephone conversations, Solorzano testified that the recordings were incomplete; according to Solorzano, at the beginning of the calls N. threatened suicide if he did not agree with what she was saying and that he went along with what she was saying because of his fear for her well-being.

### 3. *Instructions*

Among other instructions, with respect to the forcible rape, foreign object and forcible oral copulation allegations, the trial court gave the jury versions of CALCRIM Nos. 1000, 1015, and 1045.  These instructions, in addition to requiring that the prosecution show that the alleged sex acts were accomplished by force, violence, duress, menace or fear, repeatedly defined duress as "a direct or implied threat of force, violence,

7

danger, or retribution that would cause a reasonable person to do or submit to something that she would not do or submit to otherwise." The instructions further directed the jury that when deciding whether an act was accomplished by duress, "consider all the circumstances, including the woman's age and her relationship to the defendant."

In addition to instructions on the forcible crimes alleged, Solorzano asked the trial court to give the jury instructions on sections 261.5, subdivision (c), 289, subdivision (h) and 288a, subdivision (b)(1), which respectively make it a misdemeanor to have sexual intercourse with a minor, sexually penetrate a person under the age of 18, or participate in oral copulation with a person under the age of 18. Solorzano's counsel argued these crimes were lesser *related* offenses of the felonies charged in the information. The prosecutor objected to the instructions proposed by Solorzano, and the trial court declined to give them. (See *People v. Birks* (1998) 19 Cal.4th 108, 112-113 (*Birks*).)

The jury returned a verdict finding Solorzano guilty of all 21 offenses allegedly committed against N.; the jury was unable to reach a verdict on the lewd and lascivious count alleged with respect to C. The trial court declared a mistrial as to that count and then granted the People's motion to dismiss it.

The trial court sentenced Solorzano to a term of 114 years in state prison. Solorzano filed a timely notice of appeal.

## DISCUSSION

As we indicated at the outset, Solorzano contends the trial court erred in failing to give instructions on the misdemeanor offenses set forth in sections 261.5, subdivision

(a),[2] 289, subdivision (h) and 288a, subdivision (b)(1). Solorzano concedes that in light of *Birks*, *supra*, 19 Cal.4th at pages 112-113, the prosecution's objection prevented the trial court from treating the lesser crimes as lesser related offenses; however, in light of the manner the forcible sex crimes against N. were alleged, Solorzano contends that the trial court should have sua sponte given instructions on the lesser crimes as lesser *included* offenses. We find no prejudicial error.

A. *Legal Principles*

"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. [Citations.]' [Citation.] 'That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' [Citation.]" (*People v. Smith* (2013) 57 Cal.4th 232, 239 (*Smith*).)

"'California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime

---

[2]     Solorzano also contends that the trial court was required to provide the jury with an instruction on section 261.5, subdivision (c), which proscribes sexual intercourse with a minor where the minor is more than three years younger than the perpetrator. For the reasons we find that the trial court did not commit any prejudicial error in failing to instruct the jury on section 261.5, subdivision (a), we find no such error in the trial court's failure to instruct on section 261.5, subdivision (c).

9

was committed. This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence.' [Citation.] '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other. Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits." [Citations.]' [Citation.] Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' [Citation.]" (*Smith*, *supra*, 57 Cal.4th at pp. 239-240.)

For purposes of determining a trial court's instructional duties, "a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*Birks*, *supra*, 19 Cal.4th at pp. 117-118, fn. omitted.)

Importantly, even when either the statutory elements of the lesser offense fall within the statutory scope of the greater offense, or the facts included in the pleading include all the elements of the lesser offense, no lesser included offense instruction is required unless there is also substantial evidence that the lesser offense was committed. "[T]he 'substantial' evidence required to trigger the duty to instruct on such lesser offenses is not merely 'any evidence . . . no matter how weak' [citation], but rather "'evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]"'

10

that the lesser offense, but not the greater, was committed.  [Citations.]"  (*Cruz*, *supra*, 44 Cal.4th at p. 664.)

    B.  *Analysis*

       1. <u>*Accusatory Pleading*</u>

From a statutory perspective, none of the lesser offenses asserted by Solorzano on appeal is included in the greater offenses with which he was charged.  Each of the lesser offenses requires proof that the victim was either a minor (§ 261.5, subd. (a)) or under the age of 18 (§§ 289, subd. (h) & 288a, subd. (b)(1)).  Under the terms of each of the three forcible felonies involving N., none of the charged offenses require proof of the victim's age (see §§ 261, subd. (a)(2), 289, subd. (a)(1)(A) & 288a, subd. (c)(2)(A)); hence, looking solely at the crimes as they are defined in the Penal Code, it is possible to commit the charged forcible offenses without committing the asserted lesser offenses.

From the perspective of the amended information, and the accusatory pleading test, the situation is different.  Each of the counts involving N. expressly alleged that her biological father compelled her to perform a particular sex act and that at the time she was 14, 15 or 16 years old.  Given this form of pleading, section 261.5, subdivision (a)[3] was potentially a lesser included offense of each charged count of forcible rape within the meaning of section 261, subdivision (a)(2).  As Solorzano points out, section 261.5, subdivision (a) merely requires proof of sexual intercourse with a person who is a minor.

---

3    Section 261.5, subdivision (a) states:  "(a) Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor.  For the purposes of this section, a 'minor' is a person under the age of 18 years and an 'adult' is a person who is at least 18 years of age."

11

Each rape allegation alleged sexual intercourse with N., who it was alleged in each count, was under the age of 18.

The same is true with respect to the one count of penetration with a foreign object and both counts of oral copulation. Those counts, expressly alleged the sex acts were committed on a person under the age of 18, and thus also alleged potential violations of section 289, subdivision (h) and section 288a, subdivision (b)(1)[4].

### 2. *Substantial Evidence*

As we have noted, although the duty to give a lesser included offense instruction may arise when, as here, the accusatory pleading alleges facts which would support a finding the defendant committed the lesser offense, there is no duty to give such an instruction unless there is also substantial evidence in the record of the lesser crime. (See *Cruz*, *supra*, 44 Cal.4th at p. 664.)

Thus, the critical question we face is whether the record here would support a finding that, although Solorzano committed sex acts with his daughter, those acts were not forcible within the meaning of sections 261, subdivision (a)(2), 289, subdivision (a)(1)(A) and 288a, subdivision (c)(2)(A), but were at most the sex acts with a minor proscribed by sections 261. 5, subdivision (a), 289, subdivision (h), and 288a, subdivision (b)(1). In this regard, it bears emphasis that as defined by our Penal Code, forcible sex

---

[4] Section 289, subdivision (h) provides: "Except as provided in Section 288, any person who participates in an act of sexual penetration with another person who is under 18 years of age shall be punished by imprisonment in the state prison or in a county jail for a period of not more than one year." Section 288a, subdivision (b)(1) provides: "Except as provided in Section 288, any person who participates in an act of oral copulation with another person who is under 18 years of age shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year."

12

acts may occur notwithstanding the victim's unwillingness or inability to physically resist the defendant. (See *People v. Griffin* (2004) 33 Cal.4th 1015, 1024-1025 (*Griffin*).) "'[T]he fundamental wrong at which the law of rape is aimed is not the application of physical force that causes physical harm. Rather, the law of rape primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent. Because the fundamental wrong is the violation of a woman's will and sexuality, the law of rape does not require that "force" cause physical harm. Rather, in this scenario, "force" plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will.' [Citation.]" (*Ibid.*)

Of particular significance here is of course the theory of rape, penetration and oral sex *by duress*, which are all species of the forcible crimes proscribed by sections 261, subdivision (a)(2), 289, subdivision (a)(1)(A) and 288a, subdivision (c)(2)(A). In defining forcible rape by duress, section 261, subdivision (b) states: "As used in this section, 'duress' means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. *The total circumstances, including the age of the victim, and his or her relationship to the defendant, are factors to consider in appraising the existence of duress.*" (See *People v. Leal* (2004) 33 Cal.4th 999, 1004-1005; CALCRIM Nos. 1000, 1015, 1045.) This definition—which is included in the instructions for the three crimes for which Solorzano was convicted—makes it plain that a victim's acquiescence in a sex crime will not deprive the crime of its forcible nature.

13

Sex crimes by duress have repeatedly been found in circumstances very similar to the ones presented here, where the perpetrator is an adult member of a child victim's household and uses his psychological authority rather than overt physical force to compel compliance. (See *People v. Cochran* (2002) 103 Cal.App.4th 8, 14 (*Cochran*); *People v. Senior* (1992) 3 Cal.App.4th 765, 775 (*Senior*); *People v. Superior Court (Kneip)* (1990) 219 Cal.App.3d 235, 238 (*Kneip*).) In *Cochran*, the court found sufficient evidence of duress where a father was convicted of forcible lewd conduct on his nine-year-old daughter. (*Cochran*, at p. 12.) The daughter testified that her father instructed her to engage in various sexual acts, including intercourse and forced sodomy. The daughter testified that she was not afraid of her father, but that he told her not tell anyone because he would get into trouble and go to jail and that he gave her money and gifts when they were alone. The defendant was five feet nine inches tall and weighed 100 pounds more than his four-foot-three-inch daughter. In finding duress, we stated: "This record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and not the result of freely given consent." (*Id.* at pp. 15-16.)

In *Senior*, the court found duress where a father forcibly molested his 14-year-old daughter. The court noted that the defendant was the victim's father and an authority figure to her; defendant threatened to hit her and told her that if she did not submit to the molestation that it could result in a divorce, thus jeopardizing the family unit. (*Senior*, *supra*, 3 Cal.App.4th at p. 775.)

In *Kneip*, the defendant was accused of molesting his small sons and a family

14

friend. In finding sufficient evidence of duress, the court stated: "Where the defendant is a family member and the victim is young, other courts have also looked to factors such as the position of dominance and authority of the defendant and his continuous exploitation of the victim in determining the existence of force or fear." (*Kneip*, *supra*, 219 Cal.App.3d at p. 239.)

In light of the cases in which rape or other sex crimes by duress have been found where the defendant was an adult member of the victim's household, if the question we faced was whether there was sufficient evidence of Solorzano's guilt of committing the forcible sex crimes found by the jury, we would have little hesitation affirming Solorzano's convictions. N.'s testimony, Solorzano's role as her father, his relative size and strength, and the physical control he exerted over her before and during the sex acts provide ample evidence of both the psychological and physical coercion that is sufficient to establish duress. (See *Cochran*, *supra*, 103 Cal.App.4th at pp. 15-16.) However, as we have stated, our task here is somewhat different. We must determine whether, had it been instructed on the lesser crimes, a *reasonable* jury might *also* have concluded that in performing the sex acts on his daughter, Solorzano did not overcome N.'s will by use of his relationship with her and his relative size and strength. On this record, persuading us that the evidence would permit such a more benign finding, Solorzano faces some significant challenges.

The first difficulty Solorzano has is of course N.'s testimony; to believe that Solorzano had sex with N. but did not use his role as her father and his physical dominance to compel N.'s acquiescence, the jury would have to almost entirely reject N.'s testimony that she never had any desire to engage her father sexually and that she was

shocked when it first occurred.  In particular, in finding that duress was not used to repeatedly coerce N.'s compliance, a jury would have to either reject or ignore her testimony that Solorzano repeatedly performed sex acts on her when they were in close proximity to her sisters, that in one instance he performed sex acts on N. while his infant son was sleeping next to them and in a separate incident while in Celia was taking a shower.  These circumstances, like Solorzano's lack of concern for his daughter's bleeding and his laughter when she was washing his ejaculate out of her mouth, were not simply humiliations, but were unmistakable and powerful demonstrations to N. of the power he exercised over her and other members of the family.

However, there is nothing in the record which undermines N.'s credibility with respect to the nonconsensual nature of what happened to her.  Although divorced, it is clear that Celina permitted Solorzano to not only have unrestricted visitation with their children, but she relied on him for both financial support and childcare; thus, there is no basis upon which to attribute N.'s testimony against her father to any effort to provide support to her mother in an acrimonious family law dispute.  Moreover, there is nothing in the record which indicates that there was any ongoing acrimony between N. and Solorzano; indeed, among other facets of the recorded conversation between N. and Solorzano, is its manifestation that, notwithstanding Solorzano's conduct, he and N. could communicate on a fairly normal basis.

In addition to rejecting N.'s testimony, to find that a fairly substantial level of compulsion was *not* at play, a jury would also have to largely ignore the fact that the sexual acts started when N. was at the relatively young age of 14 and that Solorzano was not only both N.'s biological father but had acted as a parent from the time of her birth.

16

In addition to the fact the jury was expressly instructed to consider them, those are circumstances which we do not believe a reasonable jury could ever simply ignore. N.'s age and Solorzano's role as her father are the circumstances which, because they manifest a profound violation of trust between parent and child, make the crimes here so heinous; they are also the very circumstances which entirely explain N.'s acquiescence over a period of almost two years. Thus, instead of the atrocious crimes described by N., involving a profound abuse of power, in order to convict Solorzano of the lesser crimes, a jury would have to conclude that even though N. was only 14 and that her sex partner was the man who had reared her from birth, Solorzano's ongoing acts were relatively benign and largely consensual. When the only description of the acts was provided by N. and there was no reason to question her credibility, it is difficult to believe a reasonable jury could have drawn that conclusion.

In short, it is something of a challenge here to conclude that a reasonable jury would accept that each of the 21 sex acts which involved N. occurred but nonetheless reject N.'s portrayal of what occurred and find that, notwithstanding her age and relationship with Solorzano, she and her father were engaged in consensual acts. Thus, we are hesitant to find any error. However, even if we were to set aside our reticence and conclude that lesser included offense instructions should have been given here, we would also have to determine whether Solorzano was prejudiced by such an error.

3. *Prejudice*

In a noncapital case, a trial court's erroneous failure to fully instruct the jury on a

lesser included offense is reviewed for prejudice under the familiar *Watson*[5] standard: "A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred [citation]." (*People v. Breverman* (1998) 19 Cal.4th 142, 178, fn. omitted.)

For us, the most telling circumstances with respect to the likely impact of lesser included offense instructions, is the number of counts involving N.–21, her detailed account of each of the charged offenses, and the jury's finding that each of the alleged 21 acts occurred. The record here shows that the jury did not accept some of N.'s testimony, but *all* of it, in all of its extensive detail. N.'s testimony did not involve a small number of incidents over a short period of time, but a substantial number of incidents over a lengthy period of time. Moreover, the record shows that N. was examined by both the prosecutor and defense counsel with respect to whether she consented or otherwise expressed any willingness to perform the charged acts, and the jury was fully instructed that in order to find Solorzano guilty of the forcible sex acts, it had to find that Solorzano used one or more of the species of force defined in the statutes, including duress. In light of the whole record, including N.'s testimony, the trial court's instructions and the jury's verdict on all the counts involving N., we do not believe it is probable that had lesser included offense instructions been given, the jury would have returned a more favorable verdict to Solorzano.

---

5       *People v. Watson* (1956) 46 Cal.2d 818, 836.

DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

McDONALD, J.

19